UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,          :

    -v-                                :

EDWARD GARDNER and KENROY GLADDEN,  :

          Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

07 Cr. 1229 (JSR)

MEMORANDUM ORDER
AND JUDGMENT

JED S. RAKOFF, U.S.D.J.

        Pending before the Court is the motion of defendants
Edward Gardner and Kenroy Gladden for re-sentencing on their
crack cocaine and firearms convictions. Gardner and Gladden,
joined by the Government, argue that the Fair Sentencing Act of
2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372, applies to
defendants, like them, who committed their crimes before Congress
enacted the FSA on August 3, 2010, but are being sentenced, or
re-sentenced, after the FSA's enactment. Defendants also argue
that, given the Government's support of their FSA argument,
interpreting the FSA as not applying to them retroactively risks
violating the equal protection component of the Due Process
Clause of the Fifth Amendment, as similarly situated defendants
will be subject to disparate treatment, depending on the
interpretation of their sentencing judge. Having considered the
parties' submissions and oral arguments, the Court hereby
reaffirms its decision in United States v. Patterson, No. 10 Cr.
94(JSR), 2010 WL 5480838 (S.D.N.Y. Dec. 30, 2010), and concludes
that the FSA does not apply retroactively to defendants whose
crimes occurred before the FSA was enacted. The Court further

concludes that this interpretation of the FSA does not violate
the equal protection component of the Due Process Clause.

By way of background, in April 2008 a jury convicted
the defendants of all four counts charged in a Superseding
Indictment. Count One charged both defendants with conspiring to
distribute 50 grams and more of mixtures containing a detectable
amount of cocaine base, in a form commonly known as "crack," in
violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). Count
Two charged Gladden with distributing and possessing with intent
to distribute 5 grams and more of mixtures containing a
detectable amount of cocaine base, in a form commonly known as
"crack," in violation of 21 U.S.C. §§ 812, 841(a)(1) and
(b)(1)(B) and 18 U.S.C. § 2. Count Three charged Gardner with
distributing and possessing with intent to distribute 50 grams
and more of mixtures containing a detectable amount of cocaine
base, in a form commonly known as "crack," in violation of 21
U.S.C. §§ 812, 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. Count
Four charged both defendants with unlawfully, willfully, and
knowingly, during and in relation to a drug trafficking crime for
which they may be prosecuted in a court of the United States, to
wit, the narcotics conspiracy charged in Count One of the
Superseding Indictment, using and carrying a firearm, and

2

possessing a firearm in furtherance of such crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 2.

At the original sentencing hearing held on September 17, 2008, the Court sentenced defendant Gardner to 180 months' imprisonment. This sentence reflected the mandatory minimum of 120 months for Counts One and Three, running concurrently, and the mandatory minimum of 60 months for Count Four, required to run consecutively. On November 14, 2008, the Court sentenced defendant Gladden, who was subject to enhanced penalties, to 300 months' imprisonment. This sentence reflected the mandatory minimum of 240 months for Count One, to run concurrently with a mandatory 120 months for Count Two, and the mandatory minimum of 60 months for Count Four, required to run consecutively. In sentencing the defendants to these mandatory minimum terms, the Court noted that if it was not obligated to impose a consecutive sentence for the firearms count (Count Four), it would not.

On April 12, 2010, the Second Circuit affirmed the convictions of the defendants, but reversed their sentences and remanded the case to this Court in light of the subsequent Second Circuit decision in United States v. Williams, 558 F.3d 166 (2d Cir. 2009). See United States v. Gardner, 369 F. App'x 190 (2d Cir. 2010). Williams held that the consecutive mandatory minimum for the firearms offense, § 924(c), was inapplicable where the

3

defendant was subject to a longer mandatory minimum for a drug trafficking offense that was part of the same transaction or operative facts as the firearms offense. Williams, 558 F.3d at 168. Since this Court had indicated that it would not have sentenced the defendants to consecutive mandatory minimums under § 924(c) if it had not been obligated to do so, the Second Circuit remanded the case for resentencing. Gardner, 369 F. App'x at 192.

Accordingly, on June 15, 2010, the Court held a re-sentencing hearing. At that conference, counsel for both the defendants and the Government requested that the resentencing be adjourned pending further action by the United States Supreme Court with regard to the Second Circuit's decision in Williams. The Court agreed to postpone the resentencing until June 28, 2011.

On November 29, 2010, the United States Supreme Court issued a decision in Abbott v. United States, 131 S. Ct. 18 (2010), that effectively reversed the Second Circuit's decision in Williams. The Supreme Court held that "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." Abbott, 131 S. Ct. at 23. In light of the Supreme Court's

4

decision in Abbott, both defendants now concede that they remain subject to a mandatory five year consecutive sentence for possessing a firearm in furtherance of a drug trafficking crime despite facing a higher mandatory minimum sentence for their drug-related convictions. See Letter Brief of Defendant Edward Gardner dated June 17, 2011 ("Gardner Br.") at 1; Letter Brief of Defendant Kenroy Gladden dated July 8, 2011 ("Gladden Br.") at 1.

In the interim, however, on August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372, which amended 21 U.S.C. § 841(b)(1) by raising the requisite drug quantity for the application of the 10-year mandatory minimum under subsection (b)(1)(A) from 50 grams to 280 grams of crack-cocaine, and similarly raising the requisite drug quantity for the application of the 5-year mandatory minimum under subsection (b)(1)(B) from 5 grams to 28 grams of crack-cocaine. FSA § 2(a). Defendants argue that, although they are no longer entitled to resentencing on the firearms count, they are now entitled to resentencing on the other counts pursuant to the FSA.

The problem with defendants' new argument for resentencing, however, is a problem this Court has confronted before: whether the FSA applies retroactively to conduct that occurred before it was enacted. See Patterson, 2010 WL 5480838.

5

In determining retroactivity, the so-called "Savings Statute," 1 U.S.C. § 109, states that a defendant's liability is established by the statute in effect at the time he committed the crime, and not at the time of sentencing, unless Congress expressly provides otherwise in repealing or amending a statute. Id. at *1 (citing Warden v. Marrero, 417 U.S. 653, 661 (1974)). No one contends that the FSA so provides. However, the Supreme Court has held that the Statute does not apply in instances where, by "necessary implication, arising from the terms of the law as a whole," it is clear that "the legislative mind will be set at naught by giving effect to the [Savings Statute]." Great Northern Ry. Co. v. United States, 208 U.S. 452, 465 (1908). But in Patterson, this Court held that the FSA's direction to the United States Sentencing Commission to issue "conforming" amendments no later than 90 days after the date of enactment of the Act, FSA § 8, did not show that Congress "necessarily intended" mandatory minimums be applied retroactively to defendants not yet sentenced at the time the FSA was enacted. Patterson, 2010 WL 5480838, at *2.

This was also the Government's position at the time Patterson was decided.  But subsequently, on July 15, 2011, the Attorney General issued a memorandum to all federal prosecutors instructing them that for defendants who committed their crimes before the FSA was enacted but whose sentencings were to be held

6

after the FSA was enacted, prosecutors should take the position that the FSA applies. See Eric H. Holder, Jr., U.S. Att'y Gen., Application of the Statutory Mandatory Minimum Sentencing Laws for Crack Cocaine Offenses Amended by the Fair Sentencing Act of 2010, dated July 15, 2011 ("Holder Memo") at 2. Although this Court expressly rejected that position in Patterson, 2010 WL 5480838, at *2-4, the Government now argues that this Court should revisit its decision in Patterson. In so arguing, the Government notes that although the Second Circuit also seemed to reject this position in its opinion in United States v. Acoff, 634 F.3d 200 (2d Cir. 2011), the facts of Acoff involved a defendant whose sentencing also occurred before the FSA was enacted. 634 F.3d at 201-02. Both the Government and defendants argue that this Court should therefore read Acoff as limited to its facts and hold that the FSA does apply to all defendants sentenced after August 3, 2010, regardless of when their offense conduct occurred. See Sentencing Memorandum of the United States of America dated Aug. 1, 2011 ("Gov't Br.") at 11; Defendant Edward Gardner's Supplemental Memorandum of Law to Address Issues Raised at the August 3, 2011 Sentencing Hearing ("Gardner Supp. Br.") at 7. But see Acoff, 634 F.3d at 204-05 (Lynch, J., concurring) (noting FSA "fails to provide for any retroactive

application of its reform of the sentences for crack cocaine offenses" (emphasis added)).

After considering the parties' submissions, as well as recent cases that have addressed this issue, the Court does not believe its decision in Patterson was in error. The overwhelming majority of courts to have considered this issue agree that the FSA does not apply to defendants whose offense conduct occurred prior to the FSA's enactment, regardless of when their sentencing occurs. See, e.g., United States v. Holcomb, 657 F.3d 445, 446 & n.† (7th Cir. 2011) (reh'g en banc denied) (collecting court of appeals cases); United States v. Santana, 761 F. Supp. 2d 131, 147-48 (S.D.N.Y. 2011) (collecting cases). The Holder Memo, while reflecting a change in the Department of Justice's interpretation of the FSA,[1] is not law, and does not impact this Court's reading of the statute. See Transcript of Record at 938, United States v. Anderson, S3 09 Cr. 1022 (KMK) (S.D.N.Y. July 20, 2011) (citing Santana, 761 F. Supp. 2d 131). It is the intention of Congress, as reflected in the words of the statute, that determines whether the FSA is retroactive; the changed position of the Department of Justice does not change the law that Congress enacted.

---

[1] As Judge Easterbrook's opinion in the Seventh Circuit's denial of an en banc hearing notes, the Holder Memo is notably lacking in any explanation for its changed interpretation. Holcomb, 657 F.3d at 447-48.

8

It may be noted, however, that the Supreme Court has recently granted certiorari on this issue. See United States v. Fisher, 646 F.3d 429 (7th Cir. 2011), cert. granted sub nom. Dorsey v. United States, 565 U.S. ___ (U.S. Nov. 28, 2011) (No. 11-5683); United States v. Hill, 417 F. App'x 560 (7th Cir. 2011), cert. granted, 565 U.S. ___ (U.S. Nov. 28, 2011) (No. 11-5721). If the Supreme Court reaches a different result from the one that this Court and others have reluctantly been driven to, this Court will have no difficulty in granting resentencing at that time. Until then, however, the Court remains of the view that the FSA is not retroactive in any respect.

Turning to the equal protection issue raised by defendants, the Court concludes that its interpretation that the FSA is not retroactive does not violate the equal protection component of the Due Process Clause of the Fifth Amendment. In the resentencing hearing held on August 3, 2011, defense counsel for Gladden noted that the change in the DOJ's position raised equal protection concerns, as similarly situated defendants would receive disparate sentences, depending on whether the sentencing judge endorsed or rejected the DOJ's changed position. Tr. 8/3/11 at 8. According to defendants, in a case like United States v. Robinson, No. 10 Cr. 391-44(CM), 2011 WL 4357353 (S.D.N.Y. Sept. 16, 2011), where a court held the FSA did apply retroactively to

9

a defendant who had committed his crime before the FSA was
enacted but was sentenced after its enactment, neither the
defendant nor the DOJ would appeal that decision, leading to
alleged unequal protection. After this equal protection concern
was raised, the Court agreed to adjourn the resentencing and
provide the parties with an opportunity to submit supplemental
briefing on the constitutional issues raised by the DOJ's new
position.

        Having considered the parties' briefing and another
round of oral argument held on September 1, 2011, the Court
concludes that disparate interpretations of the retroactive
applicability of the Fair Sentencing Act do not violate the equal
protection component of the Due Process Clause, even considering
the DOJ's changed position. For their argument, defendants rely
on the Supreme Court's opinion in Griffith v. Kentucky, 479 U.S.
314 (1987), which held that "new rule[s] for the conduct of
criminal prosecutions" must be "applied retroactively to all
cases, state or federal, pending on direct review or not yet
final." 479 U.S. at 328. The Second Circuit, however, rejected a
very similar Griffith argument in Acoff, 634 F.3d 200. In Acoff,
the court of appeals noted that Griffith's concern was that the
direct appellant who prevailed before the Supreme Court in a
criminal case would be the only beneficiary of a new Supreme

Court criminal procedure rule out of all the similarly situated pending criminal appeals, solely on the fortune of being the case that the Supreme Court granted certiorari to review. Id. at 202 (quoting Griffith, 479 U.S. at 323). By contrast, the Second Circuit noted that the FSA, a congressional statute, applied on "a broad basis," and was not merely a new Supreme Court rule that would have otherwise applied to only the parties to the case before the Court. Id. Therefore, in the case of the FSA, there was no "constitutional concern" over any "'actual inequity that results when the Court chooses which of many similarly situated defendants should be the chance beneficiary of a new rule.'" Id. (quoting Griffith, 479 U.S. at 323).

Defendants attempt to distinguish Acoff by relying on the Holder Memo. According to defendants, because it is left to individual prosecutors to determine how to implement the Holder Memo, and "more importantly, it is up to individual sentencing judges to decide how, if at all, to react," the Memo "does not apply on 'a broad basis' in the same way that acts of Congress do." Gardner Supp. Br. at 4; accord Defendant Kenroy Gladden's Memorandum of Law in Aid of Sentencing dated Aug. 10, 2011 ("Gladden Supp. Br.") at 5. Specifically, as noted above, where a court holds that the FSA does not apply retroactively, a defendant will appeal but the government will not defend the

11

decision; and where a court holds the FSA does apply
retroactively, no appeal will be taken. Gardner argues "grave and
serious risk of inconsistent and unprincipled implementation of
the Holder Memo" implicates the rule and underlying concerns of
Griffith, where chance leads to disparate treatment for similarly
situated defendants. Gardner Supp. Br. at 5.

But, as the Government (which, while supporting the
defendants' position on resentencing, opposes their position on
equal protection) points out, when "two judges are asked to
interpret the law and come to different conclusions," this is not
an equal protection violation, but merely an "honest
disagreement[] between jurists." Supplemental Sentencing
Memorandum of the United States of America ("Gov't Supp. Br.") at
3. Undoubtedly, there is an element of chance that exists based
on which judge sentences a defendant, but that chance exists in
any case, regardless of the specific issue presented. Even if the
Government would now not defend an appeal of a case holding the
FSA does not apply retroactively, once the Second Circuit issues
its interpretation of the FSA that interpretation is binding on
all courts in this Circuit, or, in the U.S. Supreme Court's case,
the country. There is no equal protection violation when district
judges interpret a statute differently. Further, even though
there is a risk of structural inconsistency raised by different

decisions around the country, defendants have not explained why this Court is then bound, under the equal protection component of the Due Process Clause, to follow the pro-defendant interpretation of an unclear statute. <u>Id.</u> at 3-4.[2]

Finally, it should be noted that defendant Gladden, although represented by counsel, submitted a <u>pro se</u> supplemental sentencing memorandum to this Court on July 17, 2011, arguing that the jury did not find beyond a reasonable doubt that the drugs involved were crack cocaine, rather than powder cocaine. <u>See</u> Defendant Gladden's Supplemental Sentencing Memorandum dated July 17, 2011 ("Gladden Pro Se Supp. Br."). Thus, Gladden argues, it would be unlawful for this Court to sentence him on the crack cocaine counts. <u>Id.</u> at 2-3 (citing <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000)). This argument is without merit; as Gladden notes, his counsel stipulated with the Government that the drug type was crack cocaine. <u>Id.</u> at 1-2; Tr. at 39-40, <u>United States v. Gardner</u>, No. 07 Cr. 1229 (S.D.N.Y. Apr. 22, 2008); <u>see</u> <u>United States v. White</u>, 240 F.3d 127, 134-35 (2d Cir. 2001) (holding

---

[2] Indeed, in the interest of having a court of appeals or the U.S. Supreme Court resolve the district court split, given that neither defendant nor the Government will appeal a decision where the Court finds retroactivity, defendants' equal protection argument suggests, ironically, that even a court that favors retroactivity should hold there is <u>no</u> retroactivity, and allow a defendant and the Government to appeal the decision, leading to a more uniform resolution of this hypothetical equal protection dilemma.

where defendant stipulated to drug quantity and type, and did not object to jury instruction, any potential Apprendi error was harmless).

This leaves the Court where it began, at least for now. In light of the Supreme Court's decision in Abbott holding that a § 924(c) firearms conviction mandatory minimum runs consecutive to defendants' drug conviction mandatory minimums, and in light of this Court's decision in Patterson and the Second Circuit's decision in Acoff holding the Fair Sentencing Act of 2010 has no retroactive applicability to crimes committed before its enactment, defendants face the same mandatory minimum terms they faced when this Court first imposed its sentence in September 2008. Accordingly, the Court hereby resentences defendants to the same terms as their original sentences.[3] Specifically, the Court reaffirms by reference all the terms and conditions set forth in

---

[3] The Government notes that the original pre-sentence reports "did not attempt to calculate the quantities of crack cocaine involved in the conspiracy," and that the actual base offense level is 36 with a criminal history category of II, leading to a Guidelines sentencing range of 210-262 months' imprisonment on the drug charges for Gardner, and a Guidelines sentencing range of 240-262 months' imprisonment on the drug charges for Gladden. Gov't Br. at 14-16. Having considered this, the Court, however, continues to believe the original sentences imposed are sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing.

14

its Judgments of Conviction dated September 19, 2008, and

November 14, 2008.[4]

      SO ORDERED.

                                             _____
                                            JED S. RAKOFF, U.S.D.J.

Dated:     New York, New York
            December 28, 2011

---

[4] If the parties believe new form Judgments of Conviction need to
be issued, they should promptly so notify the Court.